Filed 1/10/24 P. v. Garza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVE FLORES GARZA,<br><br>    Defendant and Appellant. | F084667<br><br>(Super. Ct. No. BF172876A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Gloria J. Cannon, Judge.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

As a result of a vehicle collision, defendant Steve Flores Garza was convicted of two counts of second degree murder and two counts of gross vehicular manslaughter

while intoxicated with additional true findings on allegations of great bodily injury (GBI) and death to multiple victims, as well as other related driving under the influence (DUI) offenses.  Defendant contends:  (1) imposition of the upper term on the DUI causing injury count was based in part on an aggravating factor unsupported by sufficient evidence; (2) the trial court improperly used the same facts for a GBI enhancement to apply an aggravating factor in imposing the upper term; (3) the abstract of judgment should be corrected to show the court stayed sentence on two counts; and (4) defendant is entitled to three additional days of custody credit.

The People respond that the trial court's imposition of the upper term sentence was proper and supported by sufficient evidence.  The People also contend any error in imposing the upper term was harmless.  With respect to defendant's contentions regarding the abstract of judgment and custody credit, the People agree the abstract of judgment should be corrected, and defendant is entitled to three additional days of custody credit.

We order the trial court to prepare an amended abstract of judgment to show defendant's sentence was stayed on two counts and the correct amount of days of custody credit.  In all other respects, the judgment is affirmed.

## PROCEDURAL SUMMARY

On October 10, 2018, the Kern County District Attorney filed an information charging defendant with:  two counts of second degree murder for the killing of Isaiah Sanchez and Emilio Mendoza (Pen. Code, § 187, subd. (a); counts 1 & 2); two counts of gross vehicular manslaughter while intoxicated of the same victims (*id.*, § 191.5, subd. (a); counts 3 & 4); causing bodily injury to Marcos Ocampo-Carrillo while DUI (Veh. Code, § 23153, subd. (a); count 5); causing bodily injury on Marcos Ocampo-Carrillo while driving with a blood-alcohol level above 0.08 percent (*id.*, § 23153, subd. (b); count 6); and misdemeanor driving with a suspended license (*id.*, § 14601.2, subd. (a); count 7).  The information alleged defendant caused death to multiple victims (Veh.

2.

Code, § 23558); personally inflicted bodily injury to multiple victims (*id.*, § 23558); and personally inflicted GBI (Pen. Code, § 12022.7, subd. (a)) as to counts 3 through 6. (The prosecution later dismissed the GBI allegations (Pen. Code, § 12022.7, subd. (a)) on counts 3 and 4.) The information further alleged defendant had one or more prior DUI convictions (*id.*, § 191.5, subd. (d)) as to counts 3 and 4, and three or more prior DUI convictions within the last 10 years (Veh. Code, § 23550, subd. (a)) as to counts 5 and 6. On May 23, 2022, the district attorney amended the information to allege the crimes involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, and callousness (Cal. Rules of Court, rule 4.421(a)(1)), and the victims were particularly vulnerable (rule 4.421(a)(3)). (All further rule references are to the California Rules of Court.)

On June 13, 2022, defendant pled no contest to misdemeanor driving with a suspended license (count 7) and admitted his three prior DUI convictions for the enhancement allegations. On June 15, 2022, the jury found defendant guilty on all remaining counts and found true all enhancement allegations.

In a bifurcated bench trial held on June 16, 2022, the trial court found the two aggravating factors under rule 4.421(a)(1) and (3) to be true. The court also found true that defendant had suffered three prior DUI convictions.

On July 20, 2022, the trial court sentenced defendant to 30 years to life plus seven years as follows: on count 1, 15 years to life; on count 2, 15 years to life to be served consecutively; on count 5, the upper term of four years plus three years for the GBI enhancement, consecutive to count 2; and on count 7, a concurrent term of one year in county jail. The court also imposed but stayed the following sentences per Penal Code section 654: on count 3, 15 years to life plus two 1-year enhancements for causing bodily injury and death to multiple victims; on count 4, 15 years to life plus two 1-year enhancements for causing bodily injury and death to multiple victims; on count 5, two 1-year enhancements for causing bodily injury and death to multiple victims and six years

3.

for the two GBI enhancements; and on count 6, the upper term of four years plus nine years for the three GBI enhancements and two 1-year enhancements for causing bodily injury and death to multiple victims. The court calculated defendant's custody credits to be 1,482 days. The abstract of judgment indicates defendant's sentence on counts 3 and 4 as concurrent, and only identifies the enhancements on those counts as stayed.

Defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

State Route 43 (SR 43) is a two-lane highway in Kern County with a speed limit of 55 miles per hour. On the night of June 26, 2018, Valerie Aleman was driving northbound on SR 43 in an area south of Burbank Street when she stopped at a stop sign. Aleman saw a white SUV driving fast from behind her. The white SUV drove around Aleman's car by going northbound in the southbound lane without stopping at the stop sign.

Shortly after that at approximately 9:38 p.m., Marcos Ocampo-Carrillo was driving a small Honda on SR 43 with Isaiah Sanchez sitting in the back seat behind Ocampo-Carrillo and Emilio Mendoza in the front passenger seat. Ocampo-Carrillo was wearing a seat belt, but Sanchez and Mendoza were not. Ocampo-Carrillo prepared to turn the Honda left from SR 43 onto Burbank Street, a roadway that runs east and west. There is no stop sign for SR 43 at this intersection, but Burbank Street has a stop sign. Franque Jauregui was driving northbound on SR 43 and slowed down her car as she approached the intersection because the car in front of Jauregui's car had slowed down. Jauregui saw the Honda indicating with its left turn signal one car ahead of Jauregui's car. There were no cars coming southbound on SR 43, so the Honda started to turn onto Burbank Street.

Defendant was driving a white SUV alone northbound on SR 43 from behind Jauregui. Defendant drove his SUV across the road's solid yellow line at 105 miles per hour to continue north in the southbound lane and collided into the driver's side of

4.

Ocampo-Carrillo's Honda as it was turning onto Burbank Street.[1]  Jauregui saw defendant drive the SUV into the southbound lane and collide with the Honda.  Jauregui saw the Honda spin and be thrown into a fence.  The collision created debris "everywhere in the roadway," including in the intersection and a nearby market parking lot.  An empty beer can was among the debris in the road.  Valerie Aleman arrived at the intersection after the accident and observed at the scene the same white SUV that had sped around her car on SR 43.

Sanchez and Mendoza were ejected from the Honda by the impact.  Mendoza traveled airborne and collided with a different white SUV parked in the market parking lot.  Mendoza sustained blunt force trauma causing a fracture at the base of his skull and the top of his neck.  Sanchez also traveled airborne and collided with a different vehicle in the same parking lot.  Sanchez sustained lethal skull fractures.  Mendoza and Sanchez were pronounced dead at the scene.  Cause of death for both victims was blunt force injuries.  Ocampo-Carrillo was found unconscious in the driver's seat of the Honda after the collision.

Defendant was assisted from the SUV by emergency and fire personnel who arrived at the scene.  The SUV and defendant both smelled of alcohol.

CHP Officer Kurtis Caid arrived at the scene shortly after the collision.  Caid located defendant in the back of an ambulance where he was receiving treatment.  Caid observed that defendant had red, watery eyes and smelled of alcohol.

---

[1]The California Highway Patrol (CHP) obtained data from the SUV's airbag control module that showed the vehicle's speed prior to and at the time of impact.  The data also showed the vehicle was at 100 percent throttle at the time of the collision, which means the driver has pressed the vehicle's accelerator pedal as far as it can go.  The lack of tire friction marks on the roadway indicated the vehicle's brakes were not applied before the collision.

A solid yellow line indicates vehicles cannot cross the line to pass another vehicle.  A driver also cannot pass within 100 feet or traverse an intersection passing within 100 feet of the intersection.

Defendant was transported to Kern Medical Center. CHP Officer Jarrod Bone spoke with defendant at the hospital. Bone advised defendant of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Defendant told Bone that he was driving northbound on SR 43 when a vehicle pulled in front of him. Defendant told Bone he drank "a few" tall cans of beer at work before driving that night and had stopped drinking between 5:00 and 6:00 p.m. Bone observed defendant had red, watery eyes and smelled of alcohol. He concluded defendant was under the influence of alcohol and arrested defendant at 12:31 a.m.

Bone obtained a warrant to sample defendant's blood and two vials of blood were drawn from defendant at 1:20 a.m. Based on defendant's blood sample, the criminalist at the Kern Regional Crime Laboratory estimated defendant's blood-alcohol concentration (BAC) was between 0.155 percent and 0.210 percent at the time of the collision. A person is impaired for purposes of driving with a 0.08 percent BAC. A former CHP officer testified that a person with defendant's BAC at the time of the crash would have been too impaired to safely operate a motor vehicle.

Officer Caid also spoke with defendant at the hospital later that night. He readvised defendant of his *Miranda* rights. Defendant told Caid he was driving from his father's residence to see his family in Wasco. Defendant said he had consumed one 24-ounce can of beer at his father's residence after work that day.

Ocampo-Carrillo sustained head trauma, brain swelling, and internal bleeding from the accident. Surgery was required for the internal bleeding. Ocampo-Carrillo was unconscious for 15 days following the accident and remained in Kern Medical Center for three months. Ocampo-Carrillo then stayed in another facility for almost three weeks to learn how to walk and talk again.

At trial, the parties stipulated defendant had two prior DUI convictions on April 26, 2012, and August 31, 2017, respectively. The parties further stipulated defendant was read and signed a *Watson* advisal (*People v. Watson* (1981) 30 Cal.3d 290)

6.

at each sentencing hearing for both prior DUI convictions.  This advisal included a warning that "it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both.  If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder."

## DISCUSSION

## I.      Challenge to Aggravating Factors

Defendant contends the trial court improperly relied on aggravating factors to impose the upper term sentence in a manner inconsistent with amended section 1170 of the Penal Code.  (Undesignated statutory references are to the Penal Code.)  Defendant specifically challenges the court's imposition of the upper term of four years for the DUI causing injury (count 5).

### A.      Findings on Aggravating Factors and Sentencing

On June 16, 2022, following the jury's verdict, the trial court conducted a bifurcated bench trial regarding defendant's prior convictions, and the two aggravating factors that the crimes involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)) and the victims were particularly vulnerable (rule 4.421(a)(3)).  Exhibits admitted into evidence included certified copies of:  (1) defendant's rap sheet; (2) the court docket and booking photo for defendant's August 24, 2009, DUI conviction; (3) the court docket and booking photo for defendant's April 26, 2012, DUI conviction; (4) the court docket and booking photo for defendant's August 31, 2017, DUI conviction; and (5) defendant's Department of Motor Vehicles photo.

The trial court found true both alleged aggravating factors and the prior convictions:  "I have had an opportunity to review all of the exhibits, and I also reviewed [*People v. Smith* (1979) 94 Cal.App.3d 433] in regards to the definition of particularly vulnerable.  It provides insight on that particular California Rule of Court, and having

7.

reviewed all of that, I do find the priors true as well as I'm also finding the aggravating factors both true. So the priors are as to Counts 1 and 2; the aggravating factors will be as to Counts 1 through 6."

The probation officer prepared a report dated July 14, 2022. The report identified no mitigating circumstances. Five aggravating circumstances were identified and included: (1) the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)); (2) the victim was particularly vulnerable (rule 4.421(a)(3)); (3) defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous and increasing in seriousness (rule 4.421(b)(2)); (4) defendant was on two grants of misdemeanor probation when the crime was committed (rule 4.421(b)(4)); and (5) defendant's prior performance on juvenile probation and adult probation was unsatisfactory in that he violated terms and/or reoffended (rule 4.421(b)(5)).

At the July 20, 2022, sentencing hearing, the trial court pronounced in relevant part:

> "So the Court will make the following findings: [¶] There are no factors in mitigation in this case and aggravation. The crime involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness. [¶] The victim was— the victims were particularly vulnerable. [¶] The defendant's prior convictions as an adult and sustained petitions in juvenile proceedings are numerous and increasing in seriousness. [¶] The defendant was on two [grants] of misdemeanor probation in case SM115621A and LM11596A when the crime was committed. [¶] And the defendant's prior performance on probation both juvenile and adult were unsatisfactory and that he violated the terms of probation and reoffended."

There was no further discussion of mitigating and aggravating circumstances by the court. Defense counsel did not object to the sentence at the hearing.

## B. Senate Bill No. 567

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) amended section 1170, subdivision (b). (Stats. 2021, ch. 731, § 1.3.) Prior to the enactment of Senate Bill 567, the trial court had the discretion to choose which of the three terms specified for an offense best served the interests of justice. (§ 1170, former subd. (b).) Section 1170, subdivision (b)(2) now provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." A trial court may rely on certified records of conviction to determine prior convictions without submitting the matter to a jury. (§ 1170, subd. (b)(3).)

The California Rules of Court were also amended to provide guidance to the court on how to exercise its new discretion. For imposition of the upper term, rule 4.420(b) now provides: "The court may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" pursuant to the Sixth Amendment. The court subsequently explained "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely v. Washington* (2004) 542 U.S. 296,

9.

303; see *Cunningham v. California* (2007) 549 U.S. 270, 288 [California's former Determinate Sentencing Law violated "*Apprendi's* bright-line rule" because "circumstances in aggravation [to impose an upper term sentence] are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt"].)  As amended by Senate Bill 567, other than the fact of a prior conviction, section 1170 now requires "all additional facts 'legally essential' to impose an upper term sentence … be found in a manner consistent with Sixth Amendment principles."  (*People v. Falcon* (2023) 92 Cal.App.5th 911, 909 (*Falcon*), review granted Sept. 13, 2023, S281242.)  Specifically, as relevant here, the facts underlying a crime to support an aggravating factor must be found beyond a reasonable doubt by a jury or the court in a bench trial.

### C.     Compliance with Amended Section 1170

Senate Bill 567 had been effective for more than six months at the time defendant was sentenced.  This case therefore does not involve retroactive application of Senate Bill 567.  Defendant expressly waived his right to a jury trial on his prior convictions and the aggravating factors that the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)), and the victims were particularly vulnerable (rule 4.421(a)(3)).  The trial court found both factors true.

The trial court cited five aggravating circumstances when imposing defendant's sentence.  Defendant concedes the court properly relied upon the fact of his prior convictions based on certified copies of his rap sheet.  We agree.  Exhibits admitted at the bifurcated trial included certified copies of defendant's lengthy rap sheet and three prior DUI convictions.  Defendant also accepts as "valid aggravating factors" that he had numerous prior convictions of increasing seriousness, he was on probation in misdemeanor cases, and he performed poorly on probation.  Defendant only challenges

10.

the court's use of the remaining two aggravating factors applied per rule 4.421(a)(1) and (3).

### D. Whether the Victims Were Particularly Vulnerable

Rule 4.421(a)(3) provides as an aggravating factor related to the crime that the victim was "particularly vulnerable." Defendant contends the trial court erred in relying on this factor to impose the upper term on count 5 because there was insufficient evidence to support the court's finding the victims were particularly vulnerable. Defendant argues remand for resentencing is required because the court relied in part on this "invalid factor" to impose the upper term.

#### 1. Forfeiture

Defendant acknowledges an objection is required to challenge a court's reliance on an improper factor in imposing sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) He nonetheless argues no objection is necessary to preserve sufficiency of the evidence claims and thus, he may challenge the trial court's finding the victims were particularly vulnerable as unsupported by substantial evidence. The People agree an objection is generally not required to preserve a sufficiency of the evidence claim and acknowledge this principle would appear to apply equally to true findings on aggravating circumstances under rule 4.421 but confess they did not discover supporting authority for this conclusion.

As defendant acknowledges, it is well established the failure to object to a sentence imposed at sentencing generally forfeits challenge to the sentence on appeal. (*Scott*, *supra*, 9 Cal.4th at pp. 351–352.) "Included in this category [where failure to object forfeits challenge to the sentence] are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Id.* at p. 353.)

11.

It is also well established a defendant may challenge a judgment as unsupported by sufficient evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 562 (*Johnson*); *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320.) Challenges to the sufficiency of the evidence to support a judgment may be raised for the first time on appeal. (*People v. Butler* (2003) 31 Cal.4th 1119, 1126 (*Butler*).) "Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17.) "Parties may generally challenge the sufficiency of the evidence to support a judgment for the first time on appeal because they 'necessarily objected' to the sufficiency of the evidence by 'contesting [it] at trial.'" (*People v. McCullough* (2013) 56 Cal.4th 589, 596; see *People v. Hiller* (2023) 91 Cal.App.5th 335, 345 ["a challenge to the sufficiency of the evidence is generally not subject to forfeiture"]; *People v. Kiger* (2022) 76 Cal.App.5th 1147, 1150 ["a contention that a judgment is not supported by substantial evidence can always be raised for the first time on appeal"]; *People v. Neal* (1993) 19 Cal.App.4th 1114, 1122 ["issues of sufficiency of the evidence are never waived"].) "Sufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal." (*In re K.F.* (2009) 173 Cal.App.4th 655, 660.) By entering a plea of not guilty and contesting the issue at trial, a defendant necessarily objected to the sufficiency of the evidence to support the judgment. (*People v. Gibson* (1994) 27 Cal.App.4th 1466, 1469.)

Our Supreme Court has extended this principle to challenges to the sufficiency of the evidence to support a "strike" allegation. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262 (*Rodriguez*).) In *Rodriguez*, the trial court found true the defendant had suffered three prior serious felony convictions under the "Three Strikes" law, including a 1983 assault conviction. (17 Cal.4th at pp. 256, 261.) The court of appeal rejected the defendant's challenge to the sufficiency of the evidence that his 1983 conviction was not

12.

a serious felony. (*Id.* at p. 261.) The Supreme Court reversed and held there was insufficient evidence the conviction was a serious felony. (*Id.* at pp. 260–262.) The court concluded the defendant "could not waive his right to challenge the sufficiency of the evidence on which the allegation was found true until it *was* found true and, then, only by failing to file a timely notice of appeal." (*Id.* at p. 262; see *People v. Rodriguez* (2004) 122 Cal.App.4th 121, 129 [defendant was entitled to challenge sufficiency of the evidence on appeal that his prior convictions qualified as serious felonies under the Three Strikes law]; *Butler*, *supra*, 31 Cal.4th at p. 1126 [appellate review available to determine whether the record shows probable cause supporting an HIV testing order under § 1202.1 even absent objection].)

Whether a defendant may challenge on appeal the sufficiency of the evidence to support an aggravating factor found pursuant to Senate Bill 567 appears to be a novel issue. We discern no basis to preclude a defendant from challenging an aggravating factor found pursuant to amended section 1170 as unsupported by sufficient evidence. As when a defendant pleads not guilty on a predicate offense or contests a sentence enhancement, a defendant necessarily objects to the evidence's sufficiency on an aggravating factor by declining to admit that factor and submitting determination of its truth to a trier of fact. (*People v. McCullough*, *supra*, 56 Cal.4th at p. 596.) Once that aggravating factor is found true, a defendant is entitled to challenge the sufficiency of the evidence to support that finding by timely appealing it. (*Rodriguez*, *supra*, 17 Cal.4th at p. 262.)

Here, defendant requested a bench trial on his prior convictions and the two alleged aggravating factors, including the allegation the victims were particularly vulnerable. By doing so, defendant necessarily contested whether the evidence was sufficient to support a finding on this factor. As in *Rodriguez*, defendant could not forfeit challenge to the allegation's truth until the court made a true finding the victims were

particularly vulnerable. Defendant was entitled to challenge by timely appeal whether there was sufficient evidence to support the court's true finding on this factor.

We now turn to the standard of review to address defendant's challenge to the sufficiency of the evidence on this aggravating factor.

### 2. *Standard of Review*

Our Supreme Court recently held "sufficiency determinations necessarily take account of the 'standard of proof that applied before the trial court.'" (*People v. Renteria* (2022) 13 Cal.5th 951, 970.) The prosecution is required to prove every element of an offense beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 360; *Apprendi v. New Jersey*, *supra*, 530 U.S. at p. 477; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998 ["The more demanding standard of proof beyond a reasonable doubt … applies to findings of guilt in criminal matters"].) This "firmly established rule in criminal cases that the prosecution's burden of proving a defendant's guilt beyond a reasonable doubt affects how an appellate court reviews the record for substantial evidence." (*O.B.*, *supra*, at p. 1007.)

The standard for reviewing the sufficiency of the evidence for a predicate offense is well known. "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Johnson*, *supra*, 26 Cal.3d at p. 578.) "Under the substantial evidence rule, a reviewing court will defer to a trial court's factual findings to the extent they are supported in the record, but must exercise its independent judgment in applying the particular legal standard to the facts as found." (*Butler*, *supra*, 31 Cal.4th at p. 1127.) "In applying this test, we … presume in support of the judgment the existence of every fact the [the trier of fact] could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the

14.

exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the … verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The same standard applies when the prosecution relies on circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*Ibid.*) "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 639.)

As with the elements of an underlying offense, the prosecution must prove an enhancement beyond a reasonable doubt. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) The same standard of review to determine the sufficiency of the evidence for a conviction applies to an enhancement. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) Our Supreme Court recently reaffirmed the *Johnson* standard "both accounts for the beyond a reasonable doubt standard of proof that applied before the trial court and extends an appropriate degree of deference to the perspective of the trier of fact." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008.)

By its express terms, amended section 1170 requires the facts underlying an aggravating factor relied on to impose an upper term "have been found true beyond a reasonable doubt." (§ 1170, subd. (b)(2).) As previously stated, *Apprendi* requires any fact that increases the penalty for a crime be proven beyond a reasonable doubt. (*Apprendi v. New Jersey*, *supra*, 530 U.S. at p. 490; see *Cunningham v. California*, *supra*, 549 U.S. at p. 292 [factfinding that elevates a sentence range "falls within the province of

15.

the (trier of fact) employing a beyond-a-reasonable-doubt standard"]; see also *People v. Boyce* (2014) 59 Cal.4th 672, 728–729 [failure to submit aggravating circumstance that a victim was "particularly vulnerable" to a jury was not harmless error].) Because aggravating factors under amended section 1170 must also be found beyond a reasonable doubt, we conclude the same standard of review applicable to predicate offenses and enhancements applies to sufficiency of the evidence challenges to these factors. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1007–1008.)

### 3. Sufficiency of Evidence the Victims Were Particularly Vulnerable

The trial court cited to *People v. Smith*, *supra*, 94 Cal.App.3d 433 (*Smith*) in support of its finding the victims were particularly vulnerable. In *Smith*, the court of appeal construed "particularly vulnerable" as follows: "Particularly, as used here, means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." (*Id.* at p. 436.) In assessing vulnerability under rule 4.421(a)(3), we consider "the total milieu in which the commission of the crime occurred," including "the personal characteristics of the victim and the setting of the crime." (*People v. Price* (1984) 151 Cal.App.3d 803, 814.)

Defendant does not specifically argue whether the facts here show the victims were not particularly vulnerable. Instead, defendant effectively argues that a victim injured by a drunk driver is not particularly vulnerable as a matter of law, relying on *People v. Piceno* (1987) 195 Cal.App.3d 1353 (*Piceno*) and *People v. McNiece* (1986) 181 Cal.App.3d 1048 (*McNiece*), disapproved on another ground in *People v. McFarland* (1989) 47 Cal.3d 798, 805.

In *Piceno*, the defendant was driving with a BAC of 0.11 percent when he sped through a curve, skidded off the road, and struck and killed a pedestrian. (*Piceno*, *supra*, 195 Cal.App.3d at p. 1355.) The court of appeal found the trial court erred in finding the pedestrian was particularly vulnerable under rule 4.421(a)(3). (*Piceno*, at p. 1358.) The

16.

court concluded that "all victims of vehicular manslaughter—be they pedestrians, fellow drivers or passengers—were vulnerable." (*Ibid.*)  The court held that "[p]recisely because of their inherent vulnerability, drunk driving victims should not be considered more vulnerable than victims in other cases." (*Ibid.*)  Yet the court recognized a drunk driving victim could be found particularly vulnerable in "'extraordinary' circumstances." (*Ibid.*)

In *McNiece*, the defendant, while DUI, failed to stop at a stop sign and struck another car in the intersection, killing one victim and seriously injuring another. (*McNiece*, *supra*, 181 Cal.App.3d at p. 1054.)  This court found it was error for the trial court to deny the defendant probation and impose the middle term in part on the basis the victim was particularly vulnerable. (*Id.* at p. 1058.)  We cited with approval the reasoning in *People v. Bloom* (1983) 142 Cal.App.3d 310 that "the element of vulnerability is *inherent* in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol, and to use that factor to aggravate the term is improper." (*McNiece*, at p. 1059.)  In *Bloom*, the defendant lost control of his car while DUI and collided head-on with another car, fatally injuring the other driver. (*Bloom*, *supra*, at pp. 314–315.)  The *Bloom* court held that "[a]ll victims of drunk drivers are 'vulnerable victims,' but it is precisely because they are *all* vulnerable that [the victim here] cannot be considered to be vulnerable 'in a special or unusual degree, to an extent greater than in other cases.'" (*Id.* at p. 322.)  The court could "visualize extraordinary situations in which a drunk driving victim might be considered to be 'particularly vulnerable,'" but concluded "such a situation is not present here." (*Ibid.*)

Not all courts have concluded a drunk driving victim was not "particularly vulnerable."  In *People v. Weaver* (2007) 149 Cal.App.4th 1301 (*Weaver*), disapproved on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939, the defendant caused a head-on collision when she was driving while intoxicated in the wrong direction on a highway at night without headlights.  The crash killed one victim and seriously injured

17.

another victim.  (*Weaver*, at p. 1308.)  While the court of appeal recognized the trial court's denial of probation only required the victims were "vulnerable" per rule 4.414(a)(3) and not "particularly" vulnerable as required by rule 4.421(a)(3), the court nonetheless concluded the victims would qualify under either rule.  (*Weaver*, at pp. 1315–1316.)[2]  The court disagreed with the reasoning in *McNiece* and concluded "[t]here is no empirical evidence in the appellate record showing that the 'usual' victim of gross vehicular manslaughter has absolutely no advance warning or ability to attempt to avoid the defendant's car."  (*Weaver*, at p. 1316.)  The court could "envision many situations … in which the victim has at least some advance notice or warning of the imminent risk posed by the defendant's car, thereby allowing him or her at least some opportunity to attempt to avoid the collision.  Those victims presumably should be considered less vulnerable than [the victims] in this case."  (*Ibid*.)  The court explained the victims in *Weaver* were particularly vulnerable because the defendant's "car was traveling in the opposite direction of oncoming traffic on northbound Interstate 5 at a high rate of speed.  Despite the late-night darkness, its headlights were off.  In contrast, the [victims'] car was traveling in the proper direction at a normal rate of speed and had its headlights on.  Based on those circumstances, the trial court could have reasonably concluded [the victims] were *particularly* vulnerable because they, apparently unlike 'usual' victims of gross vehicular manslaughter, had absolutely no advance warning or ability to attempt to avoid the oncoming car."  (*Ibid*.)

_____

[2]The *Weaver* court criticized *McNiece* for relying on *Bloom* and rule 4.414(a)(3) to find the victims were not "particularly vulnerable" to support a denial of probation because rule 4.414(a)(3), unlike rule 4.421(a)(3), does not require the victims be *particularly* vulnerable. (*Weaver*, *supra*, 149 Cal.App.4th at p. 1316, fn. 15.)  We acknowledge the trial court may consider "[t]he vulnerability of the victim" in determining whether to grant or deny probation. (Rule 4.414(a)(3).)  We also agree with the *Weaver* court's conclusion that "the omission in rule 4.414(a)(3) of any requirement that a victim be 'particularly' vulnerable effectively (and … appropriately) makes a victim's vulnerability more frequently applicable in a trial court's weighing whether to grant or deny probation than when a trial court, having denied probation, considers whether to impose a lower, middle, or upper term." (*Weaver*, at p. 1316, fn. 15.)

18.

More recently in *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182, the court of appeal upheld imposition of the upper term based in part on a finding that a gross vehicular manslaughter victim was particularly vulnerable where the defendant was *not* driving while intoxicated. Instead, the defendant was text messaging and taking calls on her cell phone while driving on the freeway when she crashed into the back of another car, killing the driver. (*Id.* at p. 1170.) The court of appeal declined the defendant's request to disregard *Weaver* and found no reason to reject the trial court's conclusion the victim was particularly vulnerable "'because she had the expectation of safety' on the freeway at 11:00 a.m." (*Nicolas*, at p. 1182.)

*Piceno* and *Bloom* both concluded a drunk driving victim is generally not particularly vulnerable under rule 4.421(a)(3) absent extraordinary circumstances. Alternatively, the *Weaver* court reasoned a drunk driving victim may be particularly vulnerable where the victim has no advance warning or ability to avoid a collision with the intoxicated driver. Juxtaposed against each other, these analyses are not inherently conflicting, but their application is susceptible to divergent results.

The parties dispute whether substantial evidence supports the trial court's finding the victims were "particularly vulnerable." In general, defendant relies on opinions which hold that a victim injured by a drunk driver is never "particularly vulnerable" absent extraordinary circumstances. According to defendant, there was insufficient evidence to support the court's finding "of particular vulnerability in this case." He seeks a remand for resentencing, contending reliance on this unsupported factor was error, and this alleged error was prejudicial. In contrast, the People assert the trial court did not err because the evidence was sufficient to support this finding. In the alternative, the People argue any assumed error was harmless.

We need not resolve all of the parties' disputed points. Instead, we agree with the People that, even if we presume substantial evidence does not support this factor in aggravation, any error was nevertheless harmless, and resentencing is not required. As

such, we will presume (without deciding) that substantial evidence does not support the trial court's finding the victims were particularly vulnerable. With this presumption in mind, we need not address the facts underlying this issue, and we need not analyze under what circumstances a victim injured by a drunk driver may be deemed "particularly vulnerable" for purposes of finding a factor in aggravation. Instead, in part F, *post*, we will only resolve the issue of prejudice from the presumed error regarding the imposition of the aggravated sentence.

### E. Aggravating Factor: the Crime Involved Great Violence, Great Bodily Harm, or Other Acts Disclosing a High Degree of Cruelty, Viciousness or Callousness

Rule 4.421(a)(1) provides as an aggravating factor related to the crime where "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." Defendant does not argue there is insufficient evidence to support this factor. Instead, he argues the trial court could not lawfully use this factor on count 5 because the court added three years to his sentence based on the jury's finding he inflicted GBI during commission of the offense.

Courts "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence." (*Scott*, *supra*, 9 Cal.4th at p. 350; see § 1170, subd. (b)(5); rule 4.420(g), (h).) However, as defendant acknowledges, he "arguably forfeited" challenge to this error because he did not object to his sentence.

Failure to object to the dual use of facts at sentencing forfeits the issue on appeal. (*Scott*, *supra*, 9 Cal.4th at p. 355; *People v. de Soto* (1997) 54 Cal.App.4th 1, 9 [failure to specifically object to the court's dual use of facts in sentencing forfeited the issue on appeal]; *People v. Gonzalez* (2003) 31 Cal.4th 745, 755 [same].) Defendant's lack of objection to the court's use of this aggravating factor to the sentence on count 5 forfeited challenge to the court's purported improper dual use of facts. Senate Bill 567 does not

20.

relieve defendant of the necessity of objecting to the court's dual use of facts to preserve that claim on appeal.

### F. Harmless Error

Defendant argues a remand for resentencing is required because the trial court's error in relying on an unsupported aggravating factor was not harmless beyond a reasonable doubt. We disagree.

Defendant acknowledges there is a split of authority regarding retroactive application of Senate Bill 567 where the trial court imposed sentence in a manner inconsistent with amended section 1170. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500 [error is harmless where the court concludes beyond a reasonable doubt that the jury would have found at least one aggravating circumstance]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465–466 [harmless error where the jury would have found true every aggravating circumstance relied on by the court or, if not, the trial court would have reached the same conclusion even if it knew it could not rely on all the factors it did]; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110 [harmless error if there is a reasonable probability the jury would not have found each aggravating fact true and then whether it is reasonably probable the trial court would have imposed a lesser sentence based on the surviving aggravating circumstances]; *Falcon*, *supra*, 92 Cal.App.5th at p. 938 [resentencing is unwarranted where the upper term remains legal under state and federal law, and the record clearly indicates the court would have imposed the upper term], rev. granted.) Our Supreme Court is poised to address the correct standard of prejudice for retroactive application of Senate Bill 567. (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.)

Defendant was sentenced on July 20, 2022, months *after* the effective date of Senate Bill 567. This case therefore does not involve retroactive application of Senate Bill 567. The record shows the trial court complied with amended section 1170 in determining defendant's sentence. All aggravating circumstances relied on by the court

21.

were found true by a trier of fact beyond a reasonable doubt or were supported by certified records. Specifically, the court relied on five aggravating circumstances: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) the victims were particularly vulnerable; (3) defendant's prior convictions are numerous and increasing in seriousness; (4) defendant was on probation when the crime was committed; and (5) defendant's prior performance on probation was unsatisfactory.

As previously discussed, defendant forfeited challenge to the trial court's purported dual use of facts in applying rule 4.421(a)(1). Defendant also concedes three other circumstances used by the court were "valid aggravating factors." Defendant nonetheless argues the court committed federal constitutional error subject to review under *Chapman v. California* (1967) 386 U.S. 18 because the court's use of the additional factors per rule 4.421(a)(1) and (3) to impose the upper term violated his due process right to have all facts used to impose a higher sentence proved beyond a reasonable doubt. This argument misconstrues the facts because these two aggravating factors *were* found true beyond a reasonable doubt by the court in a bench trial to which defendant consented. There was no Sixth Amendment error here. (*People v. Sandoval* (2007) 41 Cal.4th 840, 838–839 [no Sixth Amend. error where one or more aggravating circumstances has been established in accordance with Sixth Amend. requirements].)

Because defendant's sentence was determined in compliance with the Sixth Amendment, the presumed error is one of state law. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 405–410, review granted Oct. 12, 2022, S275655.) Whether the court's reliance on one unsupported factor was harmless must thus be determined pursuant to *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). The *Watson* standard for state law errors requires reversal if it is reasonably probable defendant would have received a more favorable result absent the error. (*Id.* at p. 836.) As applied here, we ask whether it is reasonably probable the court would have imposed a lesser sentence on count 5 absent

22.

the error in relying on the unsupported aggravating factor. (*People v. Price* (1991) 1 Cal.4th 324, 492; *People v. Avalos* (1984) 37 Cal.3d 216, 233.)

We conclude the trial court would have imposed the upper term sentence even if we presume the court erroneously considered the victims' particular vulnerability as an aggravating circumstance. Three of the circumstances the court relied on—numerous prior convictions, probation status at the time of the offense, and prior performance on probation—indicate the court's primary concern was defendant's recidivism, including his multiple DUI convictions. The court specifically cited defendant's "extensive criminal history dating back to 1998" at the sentencing hearing. The court further noted defendant has "been given numerous opportunities at the local level to redirect his behavior including five referrals to DUI school but notwithstanding that he has been convicted of taking two lives in this case and seriously injuring a third person all while being under the influence of alcohol while driving." The court imposed a GBI enhancement on top of the upper term, indicating the court intended to apply the maximum sentence possible on this count. No mitigating circumstances were found. Even if we also exclude from consideration the challenged fourth factor found per rule 4.421(a)(1), there is not a reasonable probability the court would have imposed a lesser sentence.

We note that our application of *Watson* in this case to the question of whether the trial court would have imposed the same sentence had it not erroneously considered the victims' particular vulnerability is not inconsistent with this court's opinion in *Falcon*. In *Falcon*, this court acknowledged *Watson* "has … been applied in cases where a sentencing court considered improper sentencing factors." (*Falcon*, *supra*, 92 Cal.App.5th at p. 950, rev. granted.) Of concern in *Falcon* was whether *Watson* could be applied *retroactively* where the trial court is unaware of its sentencing discretion because the underlying sentencing scheme had changed in the interim. (*Falcon*, *supra*, at p. 950.) The *Falcon* court concluded it could not. However, as noted above, the effective date of

23.

Senate Bill 567 was months before defendant's sentencing in this case and the trial court clearly understood its discretion. Consequently, we may properly conclude the presumed error here was harmless and therefore remand for resentencing is not required.

## II. Abstract of Judgment

Defendant contends the abstract of judgment should be corrected to show the trial court stayed the sentence on the two gross vehicular manslaughter counts per section 654. The People agree with defendant that the abstract of judgment must be modified.

The trial court pronounced defendant's sentence to be 30 years to life plus seven years based on the terms imposed on counts 1, 2 and 5. The court pronounced sentence of 15 years to life plus two 1-year enhancements for causing bodily injury and death to multiple victims each on counts 3 and 4. The court stayed the sentences and enhancements on counts 3 and 4 per section 654.[3] The minute order indicates a stay only for the enhancements on these two counts. The abstract of judgment similarly reflects the sentence on counts 3 and 4 as concurrent but indicates the enhancements as stayed.

Appellate courts "may correct clerical errors at any time." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) "Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error." (*People v. Leon* (2020) 8 Cal.5th 831, 855.) Thus, the court's oral pronouncement of sentence controls over the minute order or abstract of judgment. (*People v. Mitchell*, *supra*, at p. 185; *People v. Mesa* (1975) 14 Cal.3d 466,

---

[3]The trial court's language when discussing count 3 is somewhat ambiguous as to whether the court was staying both the sentence and the enhancement. Specifically, the court stated: "punishment for said sentence enhancement shall be stayed." However, the court described defendant's aggregate term of imprisonment as "15 years to Life, plus 15 to Life, plus seven years," after having only imposed terms on counts 1, 2 and 5. This impliedly shows the court intended to stay both the sentence and enhancement on count 3. We further note that staying count 3 was also the recommendation by the probation officer that the court otherwise followed. Specifically, the probation report recommended as to count 3 that "punishment for said sentence and enhancements … be stayed pursuant to [s]ection 654 …." Neither party disputes the court intended to stay the sentence on count 3.

471.) The parties agree, as do we, that the abstract of judgment incorrectly reflects the court's oral pronouncement of sentence on counts 3 and 4, and the abstract must be modified accordingly.

## III.  Custody Credit

Lastly, defendant contends he is entitled to an additional three days of custody credit.  The People agree, as do we.

The trial court awarded defendant 1,482 days of actual custody credit and the abstract of judgment reflects this amount.  Defendant was arrested on June 27, 2018, and sentenced on July 20, 2022.  "Calculation of custody credit begins on the day of arrest and continues through the day of sentencing."  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.)  The total number of days between defendant's arrest and sentencing is 1,485.  Defendant is thus entitled to an additional three days of custody credit.

The abstract of judgment must be further modified to reflect 1,485 days of actual custody credit.

## DISPOSITION

The trial court is ordered to modify the abstract of judgment to reflect the sentence on counts 3 and 4 is stayed per section 654 and defendant is awarded a total of 1,485 days of actual custody credit.  The court is directed to forward a copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


SNAUFFER, J.

25.