Filed 4/1/25  P. v. Roblero CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUILLERMO CHRISTIAN ROBLERO,<br><br>    Defendant and Appellant. | D083019<br><br>(Super. Ct. No. SCE406206)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 14, 2025, be modified as follows:

The full paragraph ending on the bottom of page 6 is deleted in its entirety and replaced with the following:

> We agree with the Attorney General that Roblero's challenge to the version of CALCRIM No. 520 given at trial appears to fall within the former category.  Roblero does not argue that the "dangerous to human life" language of the instruction is itself legally erroneous.  Rather, he argues that this phrase was too imprecise because it "did not describe what this meant in terms of the degree of the danger."  Roblero complains that the instruction "did not . . . define what the phrase 'dangerous to human life' means" and should

have stated more specifically that it requires "a high degree of probability" of death. Although Roblero characterizes the instruction as legally incorrect, what he is really asserting is that it was "too general or incomplete, and thus needed clarification . . . ." (*Hillhouse, supra*, 27 Cal.4th at p. 503.) Because no such request for clarification was made in the trial court, the issue is forfeited. (See, e.g., *People v. Covarrubius* (2016) 1 Cal.5th 838, 877 ["Defendant's failure to request clarifying language forfeits the issues on appeal."]; *People v. Hardy* (1992) 2 Cal.4th 86, 153 ["Because the instruction given was correct, it was incumbent on defendants to request clarifying language."].)

There is no change in the judgment.

The petition for rehearing is denied.

McCONNELL, P. J.

Copies to: All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083019 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE406206) |
| GUILLERMO CHRISTIAN ROBLERO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Guillermo Christian Roblero of a second degree *Watson*[1] murder and other crimes for driving drunk on the wrong side of the freeway in the middle of the night, hitting an oncoming vehicle, and killing the other driver. He appeals from the judgment, asserting two claims of instructional error relating to the implied malice element of a *Watson* murder and one claim of sentencing error. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the facts of the accident, focusing our attention primarily on the evidence relevant to the implied malice issues raised on appeal.

On April 10, 2021, Roblero got off work at midnight and went to the Study Lounge bar in El Cajon to meet two friends. They were regulars at the Study Lounge and knew the bar was a "heavy pour," meaning that the bartenders served more alcohol than customers paid for. Roblero arrived at the bar at 12:24 a.m. and stayed until 1:48 a.m. His credit card receipts showed that he purchased eleven drinks before leaving.

When they were ready to leave, one of Roblero's friends called his sister to come pick him up because he had a prior conviction for driving under the influence (DUI) and did not want to risk driving drunk. The friend and his sister both offered to give Roblero a ride home, but Roblero declined. Surveillance video outside the bar showed Roblero swaying back and forth with an unsteady gait and appearing to stumble. Roblero got into his car and drove out of the parking lot.

Roblero initially got onto the I-8 freeway driving east in the eastbound lanes. He then made a sudden left turn, crossed both eastbound lanes, and drove onto the center median. He drifted back and forth from the roadway to

---

[1] *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).

the median several times.  The driver of another eastbound vehicle called 911 and continued observing Roblero.  Roblero crossed over the entire center median and began driving the wrong way in the westbound lanes of I-8, narrowly missing several oncoming vehicles.  After Roblero's vehicle got stuck on a guardrail for a few minutes, he continued driving the wrong way in the westbound lanes for about a mile and eventually collided head on with the victim's vehicle, killing the victim.  Roblero appeared to be going in and out of consciousness before the collision.

When a CHP officer arrived at the scene, Roblero was unconscious and there was a strong odor of alcohol emanating from his car.  On the way to the hospital, he went in and out of consciousness.  His speech was slurred and unintelligible, his eyes were red and watery, and there was a strong odor of alcohol on his breath and person.

Based on blood draws taken at the hospital, Roblero's blood concentration range at the time of the collision was between .27 and .35 percent.  To reach this level, Roblero would have had to consume about 14 to 19 standard drinks over the course of approximately an hour and a half.

At the hospital the next morning, Roblero told a police officer that he knew it was dangerous to drink and drive, and a close friend of his had died after driving drunk.  He admitted he had a prior DUI conviction.

At the time of the accident, Roblero was on probation for the prior DUI, which occurred less than two years earlier in November 2019.  When Roblero was arrested for the 2019 DUI, a CHP officer gave him a *Watson* warning that if he drove drunk again and killed someone, he could be charged with murder.  The judge gave him a similar *Watson* warning twice when he pled guilty to the DUI.  As a result of this DUI conviction, Roblero attended a four-month DUI program in 2020, which included information about the dangers

3

of drinking and driving. He received *Watson* warnings during the program orientation and in the exit interview. A search of Roblero's cell phone disclosed that friends and family members had also warned him not to drink and drive.

Roblero testified in his own defense. Both of his parents abused alcohol when he was growing up, and he suffered mental and physical abuse from his mother's boyfriends. Roblero admitted having a serious alcohol problem and a prior DUI. He knew that drinking and driving was dangerous to human life. His friend had died from a DUI while he was on the phone with Roblero. Roblero remembered drinking at the Study Lounge on the night of the accident but had no memory of anything that happened afterwards.

Roblero was charged with murder (Pen. Code,[2] § 187, subd. (a); count 1), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (c)(1); count 2), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 3), driving with a measurable amount of blood alcohol causing injury (Veh. Code, § 23153, subd. (b); count 4), and disobeying a court order (§ 166, subd. (a)(4); count 5). The information further alleged enhancements for personal infliction of great bodily injury (§ 12022.7, subd. (a)), a prior DUI conviction within the past 10 years (Veh. Code, §§ 23540, 23626), and driving with a blood alcohol content of 0.15 percent or more (Veh. Code, § 23578).

In a jury trial, the court instructed the jury with the version of CALCRIM No. 520 then in effect on the elements of murder. This version of CALCRIM No. 520 stated in relevant part:

"The defendant acted with *implied malice* if:

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

"1. He intentionally committed an act;

"2. The natural and probable consequences of the act were dangerous to human life;

"3. At the time he acted, he knew his act was dangerous to human life;

"AND

"4. He deliberately acted with conscious disregard for human life."

The court also instructed the jury with a version of CALCRIM No. 252 which stated that all the charged crimes, including second degree murder with implied malice, were general intent crimes requiring not only the commission of the prohibited act, but also a wrongful intent to do the prohibited act.

The jury convicted Roblero as charged on all counts and found true the charged enhancements. Although the verdict form did not specify the degree of the murder, the jury instructions stated: "If you find the defendant guilty of murder, it is murder of the second degree."

The court sentenced Roblero to 15 years to life for second degree murder (count 1) and an upper term of 10 years for vehicular manslaughter while intoxicated (count 2), with the latter sentence stayed under section 654. The court dismissed counts 3 and 4 and sentenced Roblero to credit for time served on count 5.

DISCUSSION

I

Roblero first argues that his murder conviction must be reversed because the version of CALCRIM No. 520 given on implied malice murder did not require the jury to make findings that (1) he committed an act that

5

objectively involved a "high probability" of resulting in death; and (2) he subjectively knew the act involved a "high probability" of death. We disagree.

Initially, the Attorney General contends that Roblero has forfeited this contention by failing to request any such clarifying instruction at trial. As the Attorney General notes, "[a] party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503 (*Hillhouse*).) At the same time, however, a failure to object does not prevent a defendant from challenging an instruction on appeal if the asserted error affected the defendant's substantial rights. (§ 1259; *People v. Thomas* (2023) 14 Cal.5th 327, 382.)

We agree with the Attorney General that Roblero's challenge to the version of CALCRIM No. 520 given at trial appears to fall within the former category. He does not assert that the instruction as given was legally incorrect. Rather, he argues that its use of the phrase "dangerous to human life" was too imprecise because it "did not describe what this meant in terms of the degree of the danger." Roblero complains that the instruction "did not . . . define what the phrase 'dangerous to human life' means" and should have stated more specifically that it requires "a high degree of probability" of death. This amounts to a contention that the instruction given at trial, though legally correct, was "too general or incomplete, and thus needed clarification . . . ." (*Hillhouse, supra*, 27 Cal.4th at p. 503.) Because no such request for clarification was made in the trial court, the issue is forfeited. (See, e.g., *People v. Covarrubius* (2016) 1 Cal.5th 838, 877 ["Defendant's failure to request clarifying language forfeits the issues on appeal."]; *People v. Hardy* (1992) 2 Cal.4th 86, 153 ["Because the instruction given was correct, it was incumbent on defendants to request clarifying language."].)

6

Even if the issue were preserved, however, we would reject it on the merits because it is foreclosed by binding Supreme Court precedents. As for the objective component of implied malice, the Supreme Court rejected the same argument Roblero makes here in *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 110–111 (*Nieto Benitez*). The defendant there argued that CALJIC No. 8.31 "misstates the law because the instruction omits a requirement that defendant commit the act with a *high probability* that death will result."[3] (*Id.* at p. 111.) The Supreme Court disagreed and concluded that "the present CALJIC No. 8.31 correctly distills the applicable case law." (*Ibid.*) In reaching this conclusion, the court noted it had previously concluded in *Watson* "that the two linguistic formulations ('an act, the natural consequences of which are dangerous to human life' and 'an act [committed] with a high probability that it will result in death') are equivalent and are intended to embody the same standard." (*Nieto Benitez*, at p. 111; see also *People v. Dellinger* (1989) 49 Cal.3d 1212, 1219, 1221–1222 [approving CALJIC definition of implied malice without any "high probability" language and noting that *Watson* "made it abundantly clear that the two definitions of implied malice" in the case law "articulated one and the same standard"].)

As for the subjective component of implied malice, the Supreme Court rejected Roblero's argument in *People v. Knoller* (2007) 41 Cal.4th 139. There, the trial court granted a new trial to a defendant who had been

_____

3    The version of CALJIC No. 8.31 given in *Nieto Benitez* stated in relevant part: " 'Murder of the second degree is [also] the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and conscious disregard for, human life.' " (*Nieto Benitez, supra,* 4 Cal.4th at p. 100.)

convicted of second degree murder on an implied malice theory. The trial court based its ruling on a finding of insufficient evidence that the defendant subjectively knew "her conduct involved *a high probability of resulting in the death of another*." (*Id.* at p. 142.) But the Supreme Court ruled that the trial court had erred in granting a new trial on this basis because *subjective knowledge* of the high probability of death is not an element of implied malice. (*Id.* at p. 157.) The court reasoned that "high probability of death" is part of the *objective* component of implied malice, not the *subjective* component. (*Ibid.*)

Roblero does not dispute that his arguments on appeal run contrary to both *Nieto Benitez* and *Knoller*. He acknowledges that the Supreme Court in *Nieto Benitez* "rejected a prior attempt to add the high degree of probability of death to the instruction defining implied malice" but argues that its "analysis is questionable." Likewise, he concedes that the Supreme Court in *Knoller* "said that a high probability of death applied only to the objective element of implied malice and not to the subjective element" but suggests that *Knoller* was "incorrect on this point." As Roblero admits, however, we are not at liberty to deviate from these controlling Supreme Court precedents. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

To the extent Roblero is suggesting that these cases have been impliedly overruled by the Supreme Court's decision in *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), we disagree. There, the court was reviewing a trial court's denial of a petition for resentencing under section 1172.6. The Supreme Court concluded there was insufficient evidence to support a theory that the defendant was guilty of murder as a direct perpetrator who harbored implied malice. The court based its decision primarily on the lack of substantial evidence of proximate cause, but it also took issue with the trial

8

court's conclusion that the defendant's conduct was " 'dangerous to human life.' " The Supreme Court explained: "To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' " 'involve[ ] a high degree of probability that it will result in death.' " ' " (*Id.* at p. 989 [quoting *Knoller*, *supra*, 41 Cal.4th at p. 152].) The court found that the defendant's conduct in traveling to rival gang territory with other gang members did "not by itself give rise to a high degree of probability that death will result." (*Reyes*, at p. 989.)

*Reyes* did not involve a jury instruction issue and the court did not suggest that either *Nieto Benitez* or *Knoller* was wrongly decided. The *Reyes* court's reference to the "high probability of death" standard in deciding a sufficiency of evidence question under section 1172.6 does not amount to a holding that trial courts must include such language in the jury instructions defining implied malice. *Reyes* did not call into question the Supreme Court's own prior holdings that the "high probability" and "natural consequences" standards of implied malice are one and the same, and that it is proper to instruct the jury solely on the latter. (*Nieto Benitez*, *supra*, 4 Cal.4th at p. 111; *Dellinger*, *supra*, 49 Cal.3d at pp. 1219, 1221–1222.) Because the Supreme Court in *Reyes* did not decide this issue and did not overrule or disapprove any of its own prior case law, we remain bound by its decisions in *Nieto Benitez* and *Knoller*. We therefore find no error in the implied malice instruction given at Roblero's trial.[4]

---

[4]     We recognize that since Roblero's trial, CALCRIM No. 520 has been modified to state in relevant part: "The natural and probable consequences of the (act/[or] failure to act) were dangerous to human life *in that the (act/[or] failure to act) involved a high degree of probability that it would result in death.*" (Italics added.) In making this modification, however, the CALCRIM committee did not suggest that it was legal error to give the prior version, the substance of which was approved in *Nieto Benitez* and *Dellinger*.

Roblero next argues that the trial court committed reversible error by instructing the jury with a version of CALCRIM No. 252 which stated that second degree murder with implied malice is a general intent crime. Even assuming any error, we would find it to be harmless under any standard.

California's appellate courts have been somewhat divided on whether implied malice murder is better characterized as a general intent crime or a specific intent crime. (Compare *People v. Whitfield* (1994) 7 Cal.4th 437, 450 [implied malice does "not fall literally within the [standard] formulation of specific intent," but it is "closely akin to [the] definition of specific intent, which requires proof that the defendant acted with a specific and particularly culpable mental state"], superseded by statute on another point as stated in *People v. Timms* (2007) 151 Cal.App.4th 1292, 1297–1298, and *Ho v. Carey* (9th Cir. 2003) 332 F.3d 587, 592–593 [general-intent instruction improper for implied malice murder charge]; with *People v. Reyes* (1997) 52 Cal.App.4th 975, 984 [" '[T]he criteria of specific intent for [the voluntary intoxication statute] are not necessarily the same as the criteria of specific intent as a measure of the scienter required for an offense.' "], and *People v. Cleaves* (1991) 229 Cal.App.3d 367, 380 ["[S]econd degree murder based on implied malice is a general intent crime but with the requirement of a certain mental state[.]"].) We need not resolve the issue because, regardless of whether implied malice murder is better categorized as a specific intent crime or a general intent crime with a required mental state, it is not reasonably likely the version of CALCRIM No. 252 given at trial caused the jury to misapply the law of murder.

As we have noted, the trial court instructed the jury on the elements of murder using CALCRIM No. 520. This instruction correctly informed the

jury that "the People must prove" malice aforethought as a necessary element of murder and correctly defined express and implied malice. The court further instructed the jury that "[w]henever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." These instructions in combination clearly informed the jury of the prosecution's burden of proving malice beyond a reasonable doubt as a necessary element of murder.

Nothing in CALCRIM No. 252 contradicted these instructions or could reasonably have been construed to relieve the prosecution of the burden of proving malice. As given, CALCRIM No. 252 said that Roblero had to act with a wrongful intent to do the prohibited act, and CALCRIM No. 520 said that he had to act with the mental state of malice for a murder conviction. CALCRIM No. 252 did not in any way suggest to the jury that it could convict Roblero of murder *without* the malice element required by CALCRIM No. 520. Notably, even the prosecutor told the jury in closing argument: "In order to prove the defendant committed murder, *I have to prove that . . .* when he acted, *he had a state of mind called malice aforethought*." (Italics added.) She conceded Roblero did not act with express malice but argued at length why the prosecution had met its burden of proving each of the elements of implied malice. In response, defense counsel similarly emphasized the malice requirement of CALCRIM No. 520 and devoted nearly his entire argument to the elements of implied malice. Neither side suggested to the jury that the wrongful intent language of CALCRIM No. 252 relieved the prosecution of the burden of proving malice as required by CALCRIM No. 520.

Given the totality of the jury instructions, and the parties' closing arguments focusing extensively on the malice requirement and the elements

11

of implied malice, the jury could not have found the defendant guilty of second degree murder without necessarily finding that he acted with implied malice by intentionally committing an act, the natural and probable consequence of which were dangerous to human life, with knowledge that his act was dangerous to human life. There was also ample evidence presented at trial to support such a finding. Under either the *Watson* standard of prejudice for state law errors (*People v. Watson* (1956) 46 Cal.2d 818, 836–837) or the *Chapman* standard for federal constitutional errors (*Chapman v. California* (1967) 386 U.S. 18, 24), we would therefore find any error in the version of CALRIM No. 252 given at trial to be harmless.

## III

The final issue Roblero raises is a sentencing issue. The trial court imposed a concurrent upper term of 10 years (stayed under § 654) for the count 2 conviction of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (c)(1).) Roblero argues that the trial court erred when it found true two of the four aggravating factors it relied on in imposing the upper term for this count. The two factors Roblero contests are: (1) that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1)); and (2) that "[t]he victim was particularly vulnerable" (*id*. at subd. (a)(3)).[5] Roblero contends that these factors were: (1) inapplicable as a matter of law because they were inherent in his commission of the offenses; and (2) not supported by substantial evidence.

---

[5] The other two aggravating factors the trial court found true that Roblero does not contest are: (1) Roblero was on probation at the time of the offense (Cal. Rules of Court, rule 4.421(b)(4)); and (2) Roblero's convictions were "of increasing seriousness" (*id*. at (b)(2)).

12

We disagree. As to the first of these factors, the crime of gross vehicular manslaughter while intoxicated can be committed with varying degrees of "cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).) The fact that it was committed with a "high degree" of cruelty, viciousness, or callousness is not inherent in the commission of the crime. (*Ibid.*) Moreover, substantial evidence supported a finding that Roblero acted with a high degree of callousness because he knew he had a serious drinking problem, he had a prior DUI, he had been warned repeatedly about the dangers of driving drunk, he decided to drink an enormous quantity of alcohol and drive home anyway, he knew his friend had decided not to drive home drunk but declined a ride from his friend's sister, and he continued driving the wrong way on the freeway in the middle of the night even after colliding with the guardrail and coming to a stop for several minutes. The trial court could reasonably find that these facts demonstrated a higher degree of callousness than that required just for the conviction. We therefore conclude the trial court did not err by finding this aggravating factor true.

As to the second of these factors, a victim of gross vehicular manslaughter who has no advance warning or ability to take evasive action may be characterized as "particularly vulnerable" within the meaning of California Rules of Court, rule 4.421(a)(3). (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182; *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1321.) Moreover, there is substantial evidence to support such a finding here. The victim was driving on the freeway in the dead of night when Roblero's vehicle suddenly crashed into him head on with both vehicles traveling at freeway speeds in opposite directions. Although it is true that all victims of drunk driving may be vulnerable in some sense (*People v. Piceno* (1987) 195 Cal.App.3d 1353, 1358), it does not necessarily follow that they are all

13

"particularly" vulnerable within the meaning of California Rules of Court, rule 4.431(a)(3). " '[P]articular vulnerability' is determined in light of the 'total milieu in which the commission of the crime occurred.' " (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1694.) We conclude that the trial court did not err by finding this aggravating factor to be true either.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.