[No. D005752. Fourth Dist., Div. One. Nov. 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY JESSIE PICENO, Defendant and Appellant.

COUNSEL

George C. Wetzel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert M. Foster, M. Howard Wayne and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—Timothy Jessie Piceno pleaded guilty to one count of vehicular manslaughter without gross negligence (Pen. Code, § 192, subd. (c)(4)). The trial court sentenced him to the upper term of four years in prison, using as aggravating factors Piceno's juvenile record, the vulnerability of the victim and the fact the crime involved a great danger of bodily harm.

### FACTS

On May 29, 1986, at approximately 6:10 p.m., Piceno was driving westbound on Lake Wohlford Road with two passengers in his car. As the car entered a curve at an excessive rate of speed, it skidded off the road and crushed Benjamin Lewis against a concrete wall. Lewis had been standing 20 feet from the road. Lewis, 63, suffered massive injuries to his legs and pelvis. He was transported via the Life Flight helicopter to Palomar Hospital, where he was pronounced dead on arrival.

The posted speed for the curve was 35 miles per hour. A California Highway Patrol officer determined the critical speed for the curve was 45 miles per hour. Piceno's estimated speed was 51 miles per hour. The investigating officer characterized Piceno's driving as reckless.

The passengers in Piceno's vehicle said they had been drinking and smoking marijuana. Piceno had a beer can between his legs at the time of the accident.

Piceno, who smelled of alcohol, failed a field sobriety test at the scene of the accident. A blood test taken one hour and forty-five minutes later revealed a blood alcohol level of 0.11 percent. Piceno admitted he had been drinking beer and smoking marijuana with his friends before the accident.

In exchange for Piceno's guilty plea to vehicular manslaughter without gross negligence—a lesser included offense of vehicular manslaughter with gross negligence—all other charges (reckless driving and excessive speed) were dropped. The probation officer recommended Piceno be sentenced to the upper term of four years but housed at the California Youth Authority pursuant to Welfare and Institutions Code section 1731.5, subdivision (c). At the sentencing hearing, which was attended by the media, the victim's

family and a large audience of onlookers, the trial court noted that it had reviewed three volumes of correspondence on behalf of the victim. The court disavowed any intimidation in rendering its sentence. In sentencing Piceno to four years in prison, the trial court specifically rejected the probation officer's recommendation that the court order Piceno be transferred to the custody of the California Youth Authority pursuant to Welfare and Institutions Code section 1731.5, subdivision (c).

## DISCUSSION

 Piceno contends he was improperly sentenced to the upper term of four years because the trial court used inappropriate aggravating factors.

After denying probation, the court stated: "Now, the Court has read your statement in mitigation, Mr. McKenzie, and all that you have outlined. The court has read the brief statement in aggravation. The court has read the statements in the probation officer's report, page 8, circumstances in mitigation and those in aggravation.

"The Court finds that in addition to [California Rules of Court, rule] 421(B)(2), that the defendant has an extensive juvenile record, even though minimal. The court finds a circumstances [*sic*] in aggravation would be rule 421(A)(1), that the crime did involve great danger of bodily harm and, in fact, did create great danger of bodily harm by the death of the victim in this case and by the very nature in which this crime was carried out.

"[Rule] 421 (A)(3), the victim was very vulnerable. I say that based upon the facts of the accident. Here's a person that was a pedestrian walking along and was crushed by someone who was driving in a negligent manner. They [*sic*] were under the influance [*sic*] of drugs and alcohol and snuffed out the life of an individual.

"The court finds that those reasons, any one of those standing by itself in the court's mind, would be sufficient to aggravate the term of imprisonment over any of the circumstances stated in mitigation.

"Therefore, it's the judgment of the court that the defendant be sentenced to the maximum amount of time that the court can sentence the defendant, the aggravated term of four years."

Piceno is correct the trial court erred in using as a circumstance in aggravation rule 421(a)(1).[1] First, the language the trial court used does not fit rule 421(a)(1). The rule does not require "great danger of bodily harm," but rather "great bodily harm or threat of great bodily harm."

Moreover, by definition, manslaughter involves the killing of a human being (see Pen. Code, § 192); death—the greatest of all bodily harm—is therefore an element of this crime. Rule 441(d) succinctly states: "A fact which is an element of the crime may not be used to impose the upper term." In making this observation, we have in mind the particular facts surrounding the death in this case. We are not, however, ruling out use of rule 421(a)(1) in all homicide cases. We foresee circumstances where application of the rule might be appropriate.

We also conclude Piceno is correct the trial court erred in using as a circumstance in aggravation rule 421(a)(3), which discusses the victim as "particularly vulnerable."

There can be no doubt about the vulnerability of Benjamin Lewis as he stood unprotected near Lake Wohlford Road if vulnerability is defined as a defenselessness against the crushing power of an out-of-control and speeding car. The issue, however, is should Lewis's vulnerability be distinguished from that of all other victims killed by drunk drivers.

In *People* v. *Bloom* (1983) 142 Cal.App.3d 310 [190 Cal.Rptr. 857], the Court of Appeal held it was error to apply rule 421(a)(3) to a vehicular manslaughter with gross negligence case. *Bloom* arose out of a two-car, head-on collision killing the driver of the second car. The defendant was driving in the curb lane at about 50 miles per hour while other cars were going about 35. The defendant swerved to avoid a rear-end collision, lost control and crossed over the center line. On the vulnerability issue, the court stated: "As used in the context of rule 421(a)(3), a 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. . . .' (*People* v. *Smith* (1979) 94 Cal.App.3d 433, 436 [156 Cal.Rptr. 502].) Rule 421(a)(3) has thus far been applied exclusively in criminal cases involving violent felonies, where the age or physical

---

[1] California Rules of Court, rule 421(a)(1) reads: "Circumstances in aggravation include: [¶] (a) Facts relating to the crime, including the fact that: [¶] (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7."

All further rule references are to the California Rules of Court.

characteristics of the victim, or the circumstances under which the crime is committed, make the defendant's act especially contemptible.

"There are few individuals as 'defenseless, unguarded, unprotected, accessible, assailable and susceptible' as those who have the misfortune of being in the wrong place at the wrong time when a drunk driver takes to the road. All victims of drunk drivers are 'vulnerable victims,' but it is precisely because they are *all* vulnerable that Carrie Lee cannot be considered to be vulnerable 'in a special or unusual degree, to an extent greater than in other cases.' (*People* v. *Smith, supra,* 94 Cal.App.3d at p. 436.) While we can visualize extraordinary situations in which a drunk driving victim might be considered to be 'particularly vulnerable,' such a situation is not present here, and therefore the court erred in applying rule 421(a)(3) to this case." (*People* v. *Bloom, supra,* 142 Cal.App.3d at pp. 321-322, fn. omitted, italics in original.)

In *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733], the Court of Appeal, relying on *Bloom,* held it error to deny probation on the basis of rule 414(c)(2) (the vulnerability of the victim). *McNiece* involved an intersection collision in which the passenger in the car hit by the defendant was killed. The defendant was driving between 50 and 55 miles per hour in a 30-mile per hour zone when he ran a stop sign. His blood alcohol level, when tested, was 0.155 percent alcohol.

No one could possibly deny the victim here was vulnerable. But, regrettably all victims of vehicular manslaughter—be they pedestrians, fellow drivers or passengers—were vulnerable. They unfortunately were in the wrong place at the wrong time.

█ "Felony drunk driving *presupposes* an entirely innocent and unsuspecting victim . . . ." (*People* v. *Levitt* (1984) 156 Cal.App.3d 500, 515 [203 Cal.Rptr. 276]; italics in original.) The element of vulnerability is inherent in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol, and to use that factor to aggravate the term is improper, absent "extraordinary" circumstances. (See *People* v. *Bloom, supra,* 142 Cal.App.3d at p. 322.) Precisely because of their inherent vulnerability, drunk driving victims should not be considered more vulnerable than victims in other cases.

Furthermore, the drunk driver does not seek to take deliberate advantage of the vulnerability of victims, unlike the situation in other criminal cases. Rule 421(a)(3) has been upheld in criminal cases involving violent felonies where the circumstances of the crime make the defendant's act "especially contemptible." (*People* v. *Bloom, supra,* 142 Cal.App.3d at p. 322.) In *People* v. *Smith* (1979) 94 Cal.App.3d 433 [156 Cal.Rptr. 502], for example,

where this court upheld use of rule 421(a)(3) to impose the upper term, two AWOL Marines decided to burglarize an elderly man. They followed him from a restaurant to his apartment, but broke into the wrong apartment and found two women sleeping. Seizing the moment, they climbed on the bed atop the women and proceeded to sexually harrass and abuse them and a third woman who arrived on the scene later. To Smith's argument "particularly vulnerable" was unconstitutionally vague, this court responded: "Having demonstrated their proclivity for victimizing the susceptible when they first determined to roll an old man, then to burgle him these two armed marines climbed on top of two sleeping women in the middle of the night without any warning. Smith and his confederate exploited the very vulnerability Smith finds difficult to discern." (*Id.* at p. 435.) In further discussing the phrase "particularly vulnerable" and what constitutes an attack on a vulnerable victim, we went on to say: "In the jargon of football players, it is a cheap shot." (*Id.* at p. 436.) There is no evidence here to support such a conclusion.

■ The Attorney General makes much of the fact the victim here was a pedestrian as opposed to a fellow driver or a passenger in a vehicle who would presumably have the manufactured body of the vehicle to protect him from the full force of impact. But the Attorney General cannot reasonably argue that Piceno in any manner sought out a pedestrian to collide with or took advantage of Lewis's position as a pedestrian in his crime. Furthermore, the Attorney General's argument that fellow drivers or passengers by entering their respective vehicles somehow assume the risks inherent in vehicular travel is a non sequitur. If this argument were relevant, the defense could retort that people should never venture from the safety of their homes lest they get run over when they cross the street.

Finally, we consider the trial court's use of Piceno's juvenile record as an aggravating factor. Rule 421(b)(2) lists as a circumstance in aggravation: "The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness."

Preliminarily, we note the record belies Piceno's contention the trial court was unclear whether he was relying on rule 421(b)(2). The record discloses the trial court relied in part on rule 414(d)(1) in denying probation to Piceno. Rule 414(d)(1), which is listed as a criterion affecting probation, is concerned with the prior criminal conduct of the defendant, be it as an adult or juvenile. The record also shows the trial court had moved on to the issue of sentencing when it began discussing circumstances in mitigation and in aggravation. The trial court then listed the circumstances in aggravation, beginning: "The court finds that in addition to 421(B)(2), that the defendant has an extensive juvenile record, even though minimal." It is

clear the trial court was discussing rule 421(b)(2) in the context of a series of circumstances in aggravation it found present in the case. We simply do not share any confusion with Piceno about whether the trial court intended rule 421(b)(2) to be used as a circumstance in aggravation. Clearly, it did.

Piceno's juvenile record consisted of the following offenses: (1) the theft of some coins from a neighbor's house (Pen. Code, § 459); (2) the purchase of stolen dirt bike parts from a friend (Pen. Code, § 496, subd. 1); (3) the theft of a dirt bike (Pen. Code, § 487, subd. 1); (4) the purchase of a stolen dirt bike chain (Pen. Code § 496, subd. 1); (5) a petty theft (Pen. Code, § 488); (6) possession of less than an ounce of marijuana (Health & Saf. Code § 11357, subd. (b)); and (7) being a minor in possession of alcohol (Bus. & Prof. Code, § 25662). Piceno committed the first three offenses when he was 13 years old. He was 15 when he committed the next two and 17 when he committed the last two.

It is clear that the trial court could properly consider Piceno's juvenile record and rely on rule 421(b)(2) to find that it was a circumstance in aggravation. (*People* v. *Hubbell* (1980) 108 Cal.App.3d 253 [166 Cal.Rptr. 466]; *People* v. *Ramos* (1980) 106 Cal.App.3d 591 [165 Cal.Rptr. 179].)

Hence, we are left with one valid factor in aggravation. ■ A single factor or circumstance in aggravation is sufficient to justify imposition of the upper term. (*People* v. *Thornton* (1985) 167 Cal.App.3d 72, 77 [212 Cal.Rptr. 916]; *People* v. *Dreas* (1984) 153 Cal.App.3d 623, 636 [200 Cal.Rptr. 586].)

■ We recognize the tragic consequences to Lewis, his family and his friends. Nonetheless, we question—given the entire record—the sentence. Here we have a young man, two months past his eighteenth birthday, given the most severe sentence permissible under the law. The record shows Piceno voluntarily acknowledged wrongdoing from the very beginning and has demonstrated a sincere remorsefulness throughout the proceedings. Although he has some learning disabilities, officials of his high school said he worked hard and never presented a behavior problem. As to his juvenile record, the half dozen or so entries are indeed numerous. But the offenses are either stale—occurring as much as five years previously when Piceno was 13 years old—or minor—the last two being misdemeanors that are often either treated as infractions (Bus. & Prof. Code, § 25662) or made subject to diversion (Health & Saf. Code, § 11357, subd. (b)).

Under these facts, we find Piceno's juvenile record standing alone is insufficient as a matter of law in a case of vehicular manslaughter without

gross negligence to aggravate the sentence. Hence, we find the trial court has not articulated a proper aggravating factor in this case.

Recognizing sentencing is not an easy task undertaken by the trial court in emotionally charged cases such as this, and in light of the foregoing, we remand for resentencing.

## DISPOSITION

Judgment of conviction affirmed. Remanded for resentencing.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied November 23, 1987, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 18, 1988.