Filed 7/17/25  P. v. Sanchez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B336180 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA156822) |
| v. | |
| GERARDO SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Gerardo Sanchez appeals from the judgment after a jury found him guilty on two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a))[1] and related charges. The trial court denied probation and sentenced Sanchez to a prison term of eight years eight months.

Sanchez does not challenge his convictions; he raises two sentencing issues. He argues that the trial court erred in presuming he was ineligible for probation and that substantial evidence did not support the jury's finding the victims were particularly vulnerable, a finding Sanchez claims the trial court may have used to deny probation and impose consecutive sentences on Sanchez's convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Sanchez Gets into an Accident While Driving Intoxicated and Kills Two of His Passengers*

In the early morning hours following Halloween night, Whitter Police Department Officer Jim Azpilicueta saw a black car traveling at approximately 100 miles per hour. Seconds later, he heard a collision and drove toward the sound. Officer Azpilicueta and another officer arrived at the scene of the accident and saw the black car in the middle of the street, resting on the driver's side. When Officer Azpilicueta approached the car, he found Sadya Molina conscious and hanging from the front passenger seat by her seatbelt. Officer Azpilicueta cut the

---

[1] Undesignated statutory references are to the Penal Code.

2

seatbelt and got Molina out of the car through the moonroof. Officer Azpilicueta then discovered James Espinosa inside the car and lodged between the driver seat and the back seat on the driver's side. Officer Azpilicueta also found Mayra Zarate lying inside the car and on the driver's side door (because the car was on its side). Espinosa and Zarate were neither moving nor breathing and appeared dead.

Approximately 45 minutes later, another officer conducted a collision investigation at the scene and found Sanchez on the ground near the accident next to a parked car. Sanchez's face was painted green. Paramedics transported Sanchez and Molina to the hospital. Molina suffered a fractured pelvis.

At the hospital Sanchez told a police detective that he was in the front passenger seat and that Espinosa was driving the car. A phlebotomist drew Sanchez's blood, and a subsequent analysis of the sample determined Sanchez had a blood alcohol content of .12 percent at that time.

B. *The Police Investigate the Accident, and the People Charge Sanchez with Several Crimes*

While collecting evidence inside the car, a traffic investigator observed green smudge marks on the air bag that had deployed from the driver's side door. No one other than Sanchez appeared to have been wearing green face paint or makeup.

A traffic collision investigator analyzed the data recorder from the car and determined the black car was traveling 133 miles per hour approximately two seconds before the collision. The investigator concluded the car first hit the center median curb, bounced off a median light pole, continued across

3

opposite lanes of traffic, and hit a tree and parked cars on the opposite side of the street. A medical examiner concluded Espinosa and Zarate suffered rapid fatal blunt force injuries and died almost instantaneously.

When the police returned Zarate's cell phone to her family, the family found a time-stamped video from the night of the accident showing Zarate, Espinosa, and Sanchez drinking alcohol at a party on Halloween night and wearing the same outfits they were wearing when the accident occurred. The video also showed Sanchez wearing green face paint.

The People charged Sanchez with two counts of gross vehicular manslaughter while intoxicated (§ 191.5, counts 1 and 2); driving under the influence of an alcoholic beverage and proximately causing bodily injury (Veh. Code, § 23153, subd. (a), count 3); and driving with a blood alcohol level of .08 percent or more and proximately causing bodily injury (Veh. Code, § 23153, subd. (b), count 4). The People further alleged for counts 3 and 4 that Sanchez inflicted great bodily injury (§ 12022.7, subd. (a)) and that, for all counts, the victims were "particularly vulnerable," within the meaning of California Rules of Court, rule 4.421(a)(3).[2]

C. *The Jury Convicts Sanchez*

The jury found Sanchez guilty on all counts and found true the allegations the victims were particularly vulnerable, within the meaning of rule 4.421(a)(3). The jurors also found true the allegations Sanchez inflicted great bodily injury upon Zarate and Espinosa.

---

[2]     Citations to rules are to the California Rules of Court.

D.    *The Trial Court Sentences Sanchez*

For the sentencing hearing the trial court had the probation report, the People's sentencing memorandum, Sanchez's statement in mitigation and sentencing memorandum, and other materials.  Sanchez asked the court to grant him probation or to sentence him to lower, and concurrent, terms on his convictions.  The People asked the court to impose the middle term on count 1, one-third of the middle term on count 2, and one-third of the middle term on count 3, all three terms to be served consecutively, and to stay execution of the sentence on count 4, as well as on the great bodily injury enhancements under section 12022.7, subdivision (a).

The trial court denied Sanchez's request for probation and sentenced him to prison for eight years eight months.  The court imposed a term of six years for his conviction on count 1, a consecutive term of two years for his conviction on count 2, and a consecutive term of eight months for his conviction on count 3.  The court stayed execution of the sentence on count 4 and the enhancements on counts 3 and 4.  Sanchez timely appealed.

## DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion in Denying Sanchez Probation*

The probation officer's report and the People's sentencing memorandum stated Sanchez was presumptively ineligible for probation under section 1203, subdivision (e)(3).  That provision states:  "Except in unusual cases in which the interests of justice would be best served if the person is granted probation, probation

5

shall not be granted to . . . [a]ny person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which that person has been convicted." Sanchez's sentencing memorandum did not state whether Sanchez was presumptively ineligible for probation under section 1203, subdivision (e), but asserted Sanchez was "eligible for a grant of probation since this is an unusual case where the interests of justice are best served by a grant of probation." Sanchez's sentencing memorandum suggested counsel believed the presumption applied, but argued he had rebutted it.

Sanchez argues that the probation officer, the prosecutor, and Sanchez's trial counsel all erroneously assumed he was presumptively ineligible for probation and that the trial court applied that incorrect assumption in denying Sanchez probation. The record does not support Sanchez's argument.

"[I]n most circumstances the trial court has broad discretion to choose probation when sentencing a criminal offender." (*People v. Prudholme* (2023) 14 Cal.5th 961, 965.) "We consider a trial court's sentencing decisions under an abuse of discretion standard of review." (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874.) "[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, [the reviewing court] cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

The trial court did not state Sanchez was presumptively ineligible for probation, nor did the court refer to section 1203 at any point during the sentencing hearing. The court did not state

it was evaluating whether Sanchez's case was "unusual" or whether the interests of justice would or would not be served by granting Sanchez probation, which are what the court would consider if it were applying the presumption against probation in section 1203, subdivision (e). The trial court stated: "I have read the letters . . . in support of Mr. Sanchez . . . asking for some degree of leniency given Mr. Sanchez's . . . lack of any kind of real criminal history. . . . They've made it very, very clear to me . . . that Mr. Sanchez was living, aside from this incident, an upstanding life." Yet, the court stated, Sanchez "was traveling at such an extremely egregious level of speed that this court has a great deal of difficulty conferring any kind of motive other than . . . an extraordinarily callous behavior." The court gave no indication that, in denying probation, it was relying on or applying a presumption, under section 1203, subdivision (e)(3), or otherwise.

Sanchez relies on *People v. Lewis* (2004) 120 Cal.App.4th 837, where the court held the trial court in that case erred in denying the defendant probation without finding the defendant intended to inflict great bodily injury. (*Id.* at p. 854.) Sanchez's reliance on *Lewis* is misplaced. In *Lewis* the probation officer, the prosecutor, and counsel for the defendant all agreed the defendant was presumptively ineligible for probation under section 1203, subdivision (e)(3). (*Lewis*, at p. 851.) The court in *Lewis* stated: "It is clear the trial court also believed [the defendant] was presumptively ineligible for probation" because the trial court found the case was not "unusual," within the meaning of section 1203, subdivision (e)(3). (*Lewis*, at p. 851.) In contrast, the trial court here made no such statement or finding. The record is silent regarding whether the trial court considered

7

the presumption of ineligibility for probation under section 1203, subdivision (e)(3). Therefore, we presume that the trial court did not apply the presumption and that the court correctly applied the law. (See *People v. Moran* (1970) 1 Cal.3d 755, 762; *People v. Gutierrez, supra,* 174 Cal.App.4th at p. 527; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)

> B. *Substantial Evidence Did Not Support the Jury's Finding the Victims Were Particularly Vulnerable, but Any Error in Relying on the Jury's Finding Was Harmless*

Sanchez argues that substantial evidence did not support the jury's finding the victims were particularly vulnerable and that the trial court relied on the vulnerable-victim finding in denying probation and imposing consecutive terms. According to Sanchez, "the court's reliance upon that factor, as the only aggravating factor noted in the probation report, likely had a profound affect [*sic*] upon the trial court's calculus of [Sanchez's] sentence, and including the court's decision to deny probation and to impose consecutive rather than concurrent sentences."

It is unclear whether the trial court, in denying probation or imposing consecutive terms, relied on the jury's finding the victims were particularly vulnerable. The probation report for sentencing identified as the only aggravating circumstance that the victims were particularly vulnerable. In their sentencing memorandum the People argued Sanchez was presumptively ineligible for probation, not because the jury found the victims were particularly vulnerable, but because Sanchez inflicted great bodily injury. The People also argued the case was not "unusual" under section 1203, subdivision (e)(3). The People gave several reasons the court should impose consecutive sentences, one of

8

which was that the jury found the victims were particularly vulnerable.  The trial court, however, did not mention the jury's finding on that factor, either in denying probation or in imposing consecutive terms.  In any event, if the court (silently) relied on the jury's finding, any error in doing so was harmless.

1. *The Victims Were Not Particularly Vulnerable*

"Any circumstances in aggravation or mitigation, whether or not the factors have been stipulated by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial, may be considered in deciding whether to impose consecutive rather than concurrent sentences." (Rule 4.425(b).) One such aggravating factor is that the "victim was particularly vulnerable." (Rule 4.421(a)(3).)  "[P]articularly . . . means in a special or unusual degree, to an extent greater than in other cases.  Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.) Examples of a "particularly vulnerable" victim are: a petite, mentally disabled woman sexually assaulted by a massage therapist (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1103); a group of unarmed parents with children the defendant shot at in a park (*People v. Esquibel* (2008) 166 Cal.App.4th 539, 558); a pregnant woman the defendant attacked to cause a miscarriage (*People v. Curry* (2007) 158 Cal.App.4th 766, 792); a 16-year-old girl raped while unconscious (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1531); an 81-year-old woman burglarized at night (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 195); a man shot multiple times in the head while sleeping (*People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1007); and an

9

"unsuspecting, unarmed, physically and mentally abused" woman the defendant shot at "as [she] lay helpless" (*People v. Nevill* (1985) 167 Cal.App.3d 198, 205).

All victims of intoxicated, reckless drivers are, in a sense, vulnerable: They have no control over the vehicle or the driver's actions that put their lives at risk. That was true here. Sanchez drove a high-performance vehicle over 100 miles per hour while under the influence of alcohol, killing two people and seriously injuring a third. Though the three victims were vulnerable, they were not particularly vulnerable, within the meaning of rule 4.421(a)(3), in the circumstances of this case. "All victims of drunk drivers are 'vulnerable victims,' but it is precisely because they are *all* vulnerable that [such victims] cannot be considered to be vulnerable 'in a special or unusual degree, to an extent greater than in other cases.'" (*People v. Bloom* (1983) 142 Cal.App.3d 310, 322; see *People v. Piceno* (1987) 195 Cal.App.3d 1353, 1358. ["regrettably, all victims of vehicular manslaughter" are vulnerable, and the "element of vulnerability is inherent in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol," but "[p]recisely because of their inherent vulnerability, drunk driving victims should not be considered more vulnerable than victims in other cases"].)

Substantial evidence did not support the jury's findings Sanchez's victims were particularly vulnerable.[3] There was no

---

[3] We review the sufficiency of the evidence "'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the [aggravating circumstance true] beyond a

evidence Sanchez or anyone else coerced the victims or forced them into the car. Indeed, Sanchez was driving Espinosa's car, which suggests Espinosa entrusted Sanchez with the keys and gave him permission to drive his car. Moreover, victims who have "at least some advance notice or warning of the imminent risk posed . . . should be considered less vulnerable." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1316, disapproved on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939; cf. *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182 ["a victim of gross vehicular manslaughter who 'has absolutely no advance warning or ability to attempt to avoid' a car that crashes into his or her vehicle may be characterized as a 'particularly vulnerable' victim"].) The victims here had notice of the risk of getting into the car with a drunk driver; video taken hours before the accident showed Zarate, Espinosa, and Sanchez drinking together at a party, indicating they knew Sanchez was intoxicated.

2.      *Any Error by the Trial Court in Relying on the Vulnerable-victim Finding Was Harmless*

Because substantial evidence did not support the jury's finding the victims were particularly vulnerable, any reliance by the trial court on that finding in denying probation or imposing consecutive sentences would have been error. Any such error, however, was harmless.

---

reasonable doubt.'" (*People v. Boyce* (2014) 59 Cal.4th 672, 691; see *People v. Hicks* (2017) 17 Cal.App.5th 496, 512 [we review the trial court's findings on aggravating circumstances for substantial evidence].)

11

"'In deciding whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors.' [Citation.] However, 'there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists.' [Citations.] Thus, the sentencing court is not required to find that any aggravating circumstances exist before imposing consecutive sentences . . . ." (*People v. Salazar* (2023) 15 Cal.5th 416, 429-430.)

"'In order to determine whether error by the trial court in relying upon improper factors in aggravation [or in imposing consecutive sentences] requires remanding for resentencing[,] "the reviewing court must determine if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"" (*People v. Sperling*, *supra*, 12 Cal.App.5th at p. 1104; accord, *People v. Dorado* (2024) 105 Cal.App.5th 717, 738; see *People v. Avalos* (1984) 37 Cal.3d 216, 233 [error in imposing consecutive sentences was harmless where it was "not reasonably probable that a more favorable sentence would have been imposed in the absence of the error"].)

In denying probation, the trial court stated: "I can tell you there is no way that this court would consider this to be a probationary case." Among other factors the court cited for denying probation and imposing consecutive sentences, the court stated the crash Sanchez caused was extraordinarily violent and "ended up killing two people [and] seriously injuring a third." The court acknowledged as mitigating factors Sanchez had no criminal history, was well-educated, had a good employment record, and submitted character references. But the court found those factors were outweighed by Sanchez's driving at such an excessive speed, callous conduct, and attempt to place "the blame

12

for this extraordinarily horrendous accident at others, including the dead young woman who was just riding along in this vehicle." The trial court made it abundantly clear, without mentioning the jury's finding the victims were particularly vulnerable, the court was not going to grant Sanchez probation or impose concurrent terms. (See *People v. Hartsfield* (1981) 117 Cal.App.3d 504, 510 ["The reasons for the imposition of a consecutive term are manifest from the record."].) Thus, even if the jury had not found the victims were particularly vulnerable or the trial court had not considered the jury's finding (if it did), the court still would have denied Sanchez probation and imposed consecutive terms. (See *People v. Champion* (1995) 9 Cal.4th 879, 934 [error in imposing consecutive sentences was harmless where it was "inconceivable that the trial court would impose a different sentence if [the reviewing court] were to remand for resentencing"].)

## DISPOSITION

The judgment is affirmed.


SEGAL, J.

We concur:


MARTINEZ, P. J.          STONE, J.

13